IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Byron K. Moore (K-65649), | ) |
| Plaintiff, | ) |
| v. | ) Case No. 14 C 9313 |
| | ) Judge Ronald Guzmàn |
| Police Officer Cuomo, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendants' motion for summary judgment [67] is granted in part and denied in part. To the extent Plaintiff alleges an excessive force claim against Insley, the Court grants Defendants' summary judgment motion as to that claim. Construing Plaintiff's complaint liberally to allege a failure to intervene claim against Officer Insley, the motion for summary judgment as to that claim is also granted. The remainder of Defendants' motion is denied. Status hearing is set for August 16, 2017 at 10:00 a.m. in order to set a trial date. Defendants' motion to provide Plaintiff with a Local Rule 56.2 Notice to Pro Se Litigants [70] is not a motion, but simply a notice to Plaintiff, and the Clerk is directed to terminate this pleading as a pending motion. Defendants are ordered to set up a telephonic hearing with the appropriate prison staff at the facility housing the Plaintiff for the status hearing.

**STATEMENT**

Plaintiff Byron Moore, an inmate currently confined at the Illinois River Correctional Center, initiated this 42 U.S.C. § 1983 action in November of 2014 against the Chicago Police Department. He alleges that police officers used excessive force when arresting him on

1

November 30, 2012. More specifically, the officers purportedly tased him twice while he was laying on the ground unarmed. Pursuant to this Court's directives, Plaintiff submitted an amended complaint naming as a defendant Chicago Police Superintendent Garry McCarthy in order to allow Plaintiff to conduct discovery regarding the identities of the specific officers involved. Plaintiff subsequently submitted a second amended complaint in June of 2015, naming SWAT Officers Andrew Cuomo, Gregory Insley, and Wagner Manzo (hereinafter "Defendants").

Currently before the Court is Defendants' motion for summary judgment to which Plaintiff has responded. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes the facts and makes all reasonable inferences in favor of the non-movant. *Jajeh*, 678 F.3d at 566. The Court's role is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "The Court may not weigh conflicting evidence . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *see also Tolan*, 134 S. Ct. at 1866.

The parties seeking summary judgment have the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of*

2

*Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the parties moving for summary judgment demonstrate the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond his initial pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (citation omitted).

B.    **Northern District of Illinois Local Rule 56.1**

When addressing a motion for summary judgment, the Court draws the background facts from the parties' N.D. Ill. Local Rule ("LR") 56.1 statements and responses, which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Under LR 56.1(a)(3), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). The statement must "consist of short numbered paragraphs, including within each paragraph

3

specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a).

The non-moving party must admit or deny each factual statement offered by the moving party and refer to any material facts that establish a genuine dispute for trial. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). The non-moving party may submit his own statements of facts, to which the moving party must similarly reply. *See* LR 56.1(b)(3)(C) & (a)(3). This Court may consider true a moving party's Rule 56.1 factual statements that are supported by the record and not properly addressed by the opposing party. *See* LR 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). The same rule applies to facts submitted by a non-moving party that are not contested or responded to by the moving party. *See* LR 56.1(a)(3)(C); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Although the Court liberally construes pleadings from pro se litigants, a party's pro se status does not excuse him from complying with these rules. *Greer v. Bd. of Edu. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).

In this case, Defendants submitted a statement of material facts in accordance with LR 56.1. (Dkt. 69.) They also filed and sent to Plaintiff a Notice to Pro Se Litigant pursuant to LR 56.2, explaining the Court's local rules and how to respond to the motion for summary judgment and Rule 56.1 statement. (Dkt. 70.) Plaintiff has responded to Defendants' Rule 56.1 statement of facts, but includes no citations to the record in support of his objections. (*See* Dkt. 80.) The Court may thus consider Defendants' Rule 56.1 factual assertions true to the extent they are supported by the record. LR 56.1(b)(3)(C); *Townsend v. Alexian Bros. Med. Ctr.*, 589 Fed.

Appx. 338, 339 (7th Cir. 2015) (unpublished) (a district court may strictly enforce its local rules and consider Rule 56.1 factual statements true when they are not properly responded to) (citing *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009)).

Nevertheless, because Plaintiff is proceeding pro se, the Court will consider the factual assertions in his summary judgment materials about which he would be able to competently testify at a trial. *See* Fed. R. Evid. 602; *Williams v. Saffold*, No. 15 C 3465, 2016 WL 1660527, at *1 (N.D. Ill. Apr. 27, 2016); *Hill v. Officer Phillips*, No. 12 C 9404, 2014 WL 626966 at *1 (N.D. Ill. Feb. 18, 2014). The Court further notes that most of the facts are not in dispute and that Defendants point out where the parties' versions of events differ. With these standards in mind, the Court turns to the facts of this case.

## II. FACTS

On November 30, 2012, Plaintiff was on the third day of a three-day drug binge that consisted mainly of crack cocaine. (Dkt. # 82, ¶ 2.)[1] That day, he smoked approximately 15 bags of crack cocaine, took Xanax, and consumed between one and one and one-half quarts of gin and several shots of vodka. (*Id.* at ¶¶ 3-5.) Plaintiff does not dispute Defendants' description of the substances he ingested, but instead asserts that he did not use heroin. (*Id.* at ¶¶ 4-7.) "Paranoid" about smoking crack cocaine in the gangway of the parking lot where he was (a car in the lot had its lights on), he entered the Archer Salon Spa at 3181 South Archer and asked to use its restroom. (*Id.* at ¶¶ 8-9, 47.) Once in the bathroom, he smoked the remainder of the crack cocaine he had, which was "about a whole bag." (*Id.* at ¶ 10, citing Pl.'s Dep., Dkt. #

---

[1] Defendants compiled in one pleading their Rule 56.1 factual statements and Plaintiff's responses. (Dkt. 82.)

62-9, at 9.) According to Plaintiff's deposition testimony, he does not recall what happened in the spa between the time he entered and when he received his first Taser shock. (Dkt. 82, ¶ 11, citing Pl.'s Dep., Dkt. # 62-9, at 36, 38, 44, 92-93.) He, however, does not believe that smoking the remainder of the crack cocaine he had at the time was possible. (Dkt. # 82 at ¶ 10.)

After exiting the bathroom, Plaintiff grabbed a female employee, entered another room of the spa, and locked the door. (*Id.* at ¶ 12.) Police were contacted, and police dispatch designated the situation as a "robbery in progress," to which many officers, including Defendants, responded. (*Id.* at ¶ 13.) Defendants were informed that Plaintiff demanded money from the officers, and had threatened to harm the female hostage if the officers did not comply. (*Id.* at ¶¶ 14-16.) Plaintiff refused to tell officers if he was armed, but officers believed he had a gun. (*Id.* at ¶ 17.) Plaintiff told the officers not to enter the room and to leave him alone. (*Id.* at ¶ 18.) Officers then heard sounds from inside the room that indicated Plaintiff was sexually assaulting the hostage. (*Id.* at ¶ 20.) A SWAT officer used a ram to break down the door. (*Id.* ¶ 21.)

When officers entered the room, they saw that the female hostage's shirt had been removed and her pants were down around her ankles. (*Id.* at ¶ 22.) According to one Defendant, Plaintiff's pants were down and his penis was exposed. (*Id.* at ¶ 23; Cuomo Aff., Dkt. # 69-4, ¶ 9.) Plaintiff did not respond to verbal commands to move away from the victim. (Dkt. # 82, ¶ 24.) Officer Cuomo had a Taser, which he deployed in lieu of his firearm so as not to harm the female victim. (*Id.* at ¶ 26.) Cuomo used a five-second burst. (*Id.* at ¶ 27.) Officer Insley picked up the female victim and moved her to another room. (*id.* at ¶ 28.) Insley neither deployed a Taser nor used any force against Plaintiff. (*Id.* at ¶ 29.)

While Plaintiff was on the ground, he was directed to show his hands. (*Id.* at ¶ 30). Plaintiff refused. (*Id.* ¶¶ 30, 32.) Cuomo deployed his Taser a second time, six seconds after the first blast. (*Id.* at ¶ 31.) Plaintiff contends he had his hands extended after the first Taser shock, thus negating the need for Cuomo to tase Plaintiff a second time. (*Id.* at ¶ 32 Response; *see also* Dkt. 82, ¶ 39.) Plaintiff refers to a report that allegedly supports his contention, but does not cite to the record and the Court is unable to locate this report. (*Id.* at ¶ 32 Response.) Officer Manzo also deployed his Taser after Cuomo in order to assist their effort to take Plaintiff into custody. (*Id.* at ¶¶ 33-34.) Ten seconds later, Manzo tased Plaintiff again. (*Id.* at ¶ 35.) Manzo's Taser shots were five-second bursts. (*Id.* at ¶ 36.)

Although Cuomo and Manzo each fired his Taser twice, Plaintiff remembers receiving only two Taser blasts, and Defendants believe Cuomo's Taser shots did not connect with Plaintiff's body. (*Id.* at ¶ 37.) Plaintiff remembers screaming after the first burst and believes his arms were outstretched after that blast, though he cannot specifically recall. (*Id.* at ¶¶ 38-39, citing Pl.'s Dep., at 50.) Following the second blast, Plaintiff was secured, taken into custody, and transported to Mercy Hospital for medical treatment. (*Id.* at ¶¶ 40-41.) Plaintiff adds, again without citation to the record, that he was treated for a Taser shot with four prongs on his back. (*Id.* at ¶ 41.) Plaintiff was charged with 16-18 felony counts as a result of the November 29, 2012 incident. (*Id.* at ¶ 42.)

In addition to addressing the facts of the events that gave rise to Plaintiff's claims, Defendants also address when they were named in this case as the issue is relevant to the statute of limitations issue they raise. On November 19, 2014, the Court received Plaintiff's original complaint naming only the Chicago Police Department and "SWAT team unit – At 35th and

Michigan." (*Id.* at ¶ 43.) On February 18, 2015, Plaintiff filed an amended complaint naming then-Chicago Police Superintendent McCarthy and unknown SWAT team members referred to as John Does. (*Id.* at ¶ 44.) On June 19, 2015, Plaintiff filed a second amended complaint naming for the first time Officers Cuomo, Insley, and Manzo. (*Id.* at ¶¶ 45-46.)

### III. DISCUSSION

Defendants argue that: (1) Plaintiff's claims are time-barred and, addressing the merits of Plaintiff's claims, (2) because only one officer's Taser shots connected with Plaintiff, the other officers thus used no force, and the use of a Taser was not excessive considering the circumstances.

#### A. Timeliness of Plaintiff's Claims

Defendants argue that, because they were not named until Plaintiff's June 19, 2015 complaint—two and one-half years after the November 30, 2012 incident—the claims against them are untimely. Just before submitting their summary judgment papers, Defendants filed a motion seeking leave to amend their answer to add the statute of limitations as an affirmative defense. (Dkt. # 63.) In an order dated October 26, 2016, the Court granted their motion, but also indicated that Defendants could not raise the issue on summary judgment because Plaintiff had not had the opportunity to conduct discovery on the issue. (Dkt. # 65.) Arguing that the Court should reconsider its order and allow them to raise the statute of limitations on summary judgment, Defendants contend that it is only Plaintiffs knowledge that is relevant and thus additional discovery is unnecessary. The Court disagrees.

8

Section 1983 does not itself contain a statute of limitations period, and thus borrows the limitations period for similar claims in the state where the claims arose. For claims of excessive force arising in Illinois, the limitations period is two years. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) ("In Illinois, the statute of limitations for § 1983 claims is two years.") (citing 735 ILCS 5/13–202).

The parties do not dispute that Plaintiff did not know the relevant officers' names at the time he filed his complaint in mid-November 2014, and that they were added in June 2015, more than two and one-half years after the incident giving rise to Plaintiff's claims. The question is whether the date they were added to this suit relates back to the date the original complaint was filed.

Rule 15(c)(1)(C) provides that claims against newly identified defendants relate back if:

> within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Defendants rely on "long-standing Seventh Circuit precedent holding that the naming of John Doe defendants does not stop the statute of limitations and that a plaintiff's lack of knowledge does not constitute a mistake for purposes of relation back." *Ryan v. City of Chi.*, No. 15 C 9762, 2016 WL 6582570, at *2 (N.D. Ill. Nov. 7, 2016) (addressing in another case the same contention that Rule 15(c) does not relate back for Doe defendants) (citing *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000); *Hall v. Norfolk S. Ry. Co.*, 469

9

F.3d 590, 596 (7th Cir. 2006); *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir. 1978) (all three cases held that naming "John Doe" defendants in a complaint does not toll the statute of limitations until named defendants are substituted as parties).

After the Supreme Court decision in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), however, the focus of whether the Rule 15(c) relation-back provision applies "has shifted away from the plaintiff's to the defendant's knowledge." *Ryan*, 2016 WL 6582570, at *2. "The question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of . . . the proper defendant, but whether [the proper defendant] knew or should have known that it would have been named as a defendant but for an error." *Krupski*, 560 U.S. at 548. "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Id.* "Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.*; *see also Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011).

Courts in this district have acknowledged (though not unanimously) that the Supreme Court's analysis in *Krupski* alters the Seventh Circuit's prior rule that "'relation back' on grounds of mistake concerning the identity of the proper party does not apply where the plaintiff simply lacks knowledge of the proper defendant." *Clair v. Cook Cty., Ill.*, No. 16 C 1334, 2017 WL 1355879, at *4 (N.D. Ill. Apr. 13, 2017) ("Under *Krupski* and *Joseph*, then, the court must limit its inquiry under Rule 15(c)(1)(C)(ii) to what the newly named defendants knew or should have known.") (citation and some internal quotation marks omitted); *Ryan*, 2016 WL 6582570,

10

at *2 (noting the trend of cases applying *Krupski* to John Doe cases and denying a motion to dismiss based on pre-*Krupski* holdings until the unknown defendants were named and the record was developed as to what those defendants knew); *Cheatham v. City of Chi.*, No. 16-cv-3015, 2016 WL 6217091, at *2–3 (N.D. Ill. Oct. 25, 2016) (finding relation back proper even though plaintiff identified John Doe defendant after the statute of limitations had run, finding that *Krupski* changed the inquiry to focus on the defendant's instead of the plaintiff's knowledge); *Karney v. City of Naperville*, No. 15 C 4608, 2016 WL 6082354, at *9 (N.D. Ill. Oct. 18, 2016) (rejecting traditional John Doe rule in favor of focusing on defendant's knowledge); *White v. City of Chi.*, No. 14 CV 3720, 2016 WL 4270152, at **15-18 (N.D. Ill. Aug. 15, 2016) (addressing the applicability of *Krupski* to cases referring to defendants as John Does in the original complaint and adding the names of those parties after the limitations period has run) (collecting cases).

This Court's October 26, 2016 order, which allowed Defendants to add the statute of limitations as an affirmative defense but precluded them from raising it on summary judgment, took into account the above analysis—that this Court cannot determine the statute of limitations issue without considering "what . . .[D]efendant[s] knew or should have known during the Rule 4(m) period" and whether they "knew or should have known that [they] would have been named as a defendant." *Krupski*, 560 U.S. at 548. These facts will have to be determined at trial. Defendants' argument that this suit is time-barred is therefore denied at this time.

**2. Excessive Force**

Defendants argue that since only one officer's Taser shots connected with Plaintiff, the other officers could not have used excessive force, and that the one officer's firing of a Taser

twice was reasonable in light of the circumstances. "A claim that an officer employed excessive force in arresting a person is evaluated under the Fourth Amendment's objective-reasonableness standard." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). "The reasonableness standard is incapable 'of precise definition or mechanical application,'" and "depends on the totality of the facts and circumstances known to the officer at the time the force is applied." *Id*. (citations omitted). "[O]nly if . . . the officer used greater force than was reasonably necessary to make the arrest'" is his "use of force [] unreasonable from a constitutional point of view." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (citation omitted).

The evidence in the record establishes that Officer Insley made no contact with Plaintiff and did not deploy a Taser. Insley's primary role was helping the victim off the floor and into another room. Therefore, to the extent that Plaintiff is alleging that Insley committed excessive force, summary judgment in favor of Insley on that claim is granted. Construing the allegations in Plaintiff's pro se complaint liberally, the Court interprets Plaintiff to also be alleging a failure to intervene claim against Insley. "A police officer can be liable for another officer's excessive force [ ] if that officer had a realistic opportunity to intervene and stop the first officer's actions." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). A "realistic opportunity" exists if there was "a chance to warn the officer using excessive force to stop." *Id.* (citing *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005)).

Assuming *arguendo* that a constitutional violation occurred, and viewing the record in a light most favorable to Plaintiff, it does not support a finding that Insley had any realistic opportunity to prevent either Cuomo or Manzo from deploying their Tasers. According to

12

Insley's affidavit, after the door was breached, he saw Plaintiff and the victim on the floor, picked up the victim and removed her from the room. (Defs.' Ex. C, Insley Aff., ¶¶ 11-13.) That testimony remains unrebutted. Therefore, the Court grants Defendants' summary judgment motion with respect to any failure to intervene claim against Insley.

As to Officers Cuomo and Manzo, the evidence shows that both shot their Tasers twice. Plaintiff states he remembers being shocked only twice not four times, and Defendants believe that Manzo's Taser shots (the latter two shots) were likely the ones that struck Plaintiff. But the record is not clear on this point, and both Manzo and Cuomo were present when the other fired his Taser. Cuomo's contention that his Taser shots did not connect with Plaintiff is not established in the record; nor is his contention correct that, if his Taser shots did not connect, he cannot be liable. Accordingly, summary judgment is unwarranted for Cuomo on these grounds.

Nor can the Court conclude, as Defendants Cuomo and Manzo argue, that Plaintiff cannot establish that firing a Taser twice under the circumstances constituted excessive force. Unnecessary use of a Taser can amount to excessive force. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010). The parties disagree whether Plaintiff was resisting arrest and obeyed the officers' directives for him to show his hands. Defendants contend that, once they broke down the door and entered the room, Plaintiff was positioned behind the victim in a way that appeared to indicate he was about to commit a sexual offense. According to Defendants, Plaintiff was tased once and, while on the floor, was tased again after refusing to follow the officers' orders to show his hands. Plaintiff, however, states he was on the floor, did not resist, and after being shocked with a Taser the first time, screamed and spread his hands out, thus

displaying he was unarmed. Plaintiff contends, therefore, that there was no reason for the second Taser shot.

"As [the Seventh Circuit has said] many times, summary judgment cannot be used to resolve swearing contests between litigants." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Any conclusion by this Court regarding what actually occurred and whether the circumstances warranted two Taser shots would necessarily involve weighing the evidence and making credibility determinations, which courts avoid at the summary judgment stage. *See id.* at 771 (even though the Seventh Circuit doubted the plaintiff's version of events, the court nonetheless held that it could not weigh evidence or make credibility findings when considering summary judgment); *see also Cyrus*, 624 F.3d at 863 (in a case involving excessive force claims based on multiple Taser shocks during an arrest, stating that while the first Taser shock could have been justified, subsequent shocks may not have been and noting that "as the threat changes, so too should the degree of force").

The record thus presents disputed issues of fact as to whether Plaintiff was resisting arrest, whether he refused to follow Officers Manzo and Cuomo's commands for him to show his hands, and who shocked him. As a result, the Court denies summary judgment with respect whether shocking Plaintiff twice with a Taser constituted excessive force. The same disputed issues of fact preclude summary judgment with respect to Defendants' assertion of qualified immunity.

## CONCLUSION

Defendants' motion for summary judgment [67] is granted in part and denied in part. To the extent Plaintiff alleges an excessive force claim against Insley, the Court grants Defendants'

summary judgment motion as to that claim.  Construing Plaintiff's complaint liberally to allege a failure to intervene claim against Officer Insley, the motion for summary judgment as to that claim is granted.  The remainder of Defendants' motion is denied.  Defendants' motion to provide Plaintiff with a Local Rule 56.2 Notice to Pro Se Litigants [70] is not a motion, but simply a notice to Plaintiff, and the Clerk is directed to terminate this pleading as a pending motion.  A status hearing is set for August 16, 2017 at 10:00 a.m. in order to set a trial date.  Defendants are directed to arrange for Plaintiff's participation by telephone.

**DATE: August 1, 2017**

**Ronald A. Guzmàn**
**United States District Judge**