# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Byron K. Moore,<br>    Plaintiff,<br><br>v.<br><br>Chicago Police Officer Cuomo, et al.,<br>    Defendants. | Case No. 14 C 9313<br><br>Judge Ronald Guzmàn |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' second motion for summary judgment is denied. A status hearing is set for September 12, 2018 at 9:30 a.m. in order to set a trial date. Defendants are ordered to set up the telephonic hearing with the appropriate staff at the prison housing the Plaintiff for the date and time of the status.

## STATEMENT

Byron Moore, an Illinois prisoner currently confined at the Illinois River Correctional Center, initiated this 42 U.S.C. § 1983 action against "Chicago Police Department SWAT Team Unit at 35th and Michigan," alleging that officers used excessive force by tasing him twice during an arrest on November 30, 2012. (Dkt. # 1.) Although Plaintiff's complaint was received by the Court on November 19, 2014, the individual officers (Andrew Cuomo, Wagner Manzo, and Gregory Insley) were not named as defendants until Plaintiff's Second Amended Complaint ("SAC"), which was filed in June 2015.

On August 1, 2017, the Court granted in part and denied in part Defendants' motion for summary judgment regarding the merits of Plaintiff's § 1983 claim. Officer Insley was dismissed as a defendant because the record demonstrated that he neither used nor could have prevented the use of excessive force. Summary judgment was denied as to Cuomo and Manzo

because the record was not sufficiently developed to determine that they did not use excessive force or that Plaintiff's claims against them were untimely—more specifically, that the SAC did not relate back to the filing date of the original complaint under Federal Rule of Civil Procedure ("Rule") 15(c)(1). The Court directed the parties to conduct discovery on whether Defendants had notice of this suit during the limitations period plus the period of time for service, and whether they knew or should have known that they would have been named as defendants but for a mistake with their identities in a timely-filed complaint. Currently before the Court is Defendants' second summary judgment motion, in which they argue that the suit against them is time-barred. Plaintiff has responded.

I.  **STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When addressing a motion for summary judgment, all facts and reasonable inferences drawn therefrom are construed in favor of the non-movant. *Jajeh v. Cty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). The Court's role is not to weigh evidence or make credibility determinations, "but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

The party moving for summary judgment has the initial burden of showing the absence of a disputed material fact and its entitlement to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving party meets this burden, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute."

*Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Pursuant to N.D. Ill. Local Rule ("LR") 56.1, Defendants submitted a Statement of Material Facts ("SOF") with their motion for summary judgment. Defendants' statements are supported by the record materials they cite, and Plaintiff does not dispute most of them. Where Plaintiff's response does dispute a statement, however, he often fails to cite to the record supporting the denial or the citation does not support Plaintiff's position; as a result, certain of Plaintiff's responses to Defendants' SOF do not comply with LR 56.1(b), which requires a record citation supporting a denial of a statement of fact. *See* LR 56.1(b). Thus, as to Plaintiff's non-compliant denials, provided Defendants' statement of fact is supported by the record, the Court will consider it admitted. *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607 (7th Cir. 2017). Nevertheless, because Plaintiff is proceeding *pro se*, the Court will also consider as true factual assertions in his summary judgment materials about which he would be able to competently testify at a trial, unless they are contradicted by record evidence. *See* Fed. R. Evid. 602; *Williams v. Saffold*, No. 15 C 3465, 2016 WL 1660527, at *1 (N.D. Ill. Apr. 27, 2016).

## II.   FACTS

The background facts of this case are undisputed. On November 30, 2012, Plaintiff was tased at least twice during his arrest. (Defs.' Am. Answer, Dkt. # 66, ¶ 1.) Details of the arrest

3

and the events leading up to it are described in the Court's August 1, 2017 opinion and are not repeated here. (8/1/17 Order, Dkt. # 86.) The parties agree that Plaintiff filed his complaint on November 19, 2014,[1] naming "Chicago Police Dep't. SWAT Team Unit at 35th and Michigan" as Defendant. (Compl., Dkt. # 1.)[2] On January 6, 2015, the Court conducted its screening review of the complaint and dismissed it because Plaintiff had not listed a suable party. (1/6/15 Order, Dkt. # 5.) The Court advised Plaintiff that if he did not know the arresting officers' identities, he could name Chicago Police Superintendent Garry McCarthy as a defendant to assist with identifying the officers who arrested Plaintiff. (*Id.*) The Court informed Plaintiff that the statute of limitations for his claims was two years, and that while the Court was not going to decide the timeliness issue on initial review, Plaintiff should seek the identities of the individual defendants as soon as possible. (*Id*. at 2.)

On February 5, 2015, the Court received Plaintiff's First Amended Complaint ("FAC") naming Superintendent McCarthy and "SWAT Team John Doe" as defendants. (FAC, Dkt. # 6.) On February 18, 2015, the Court allowed the FAC to proceed against McCarthy and instructed

---

[1] Plaintiff initiated this suit while incarcerated, and the complaint is dated October 21, 2014. (Compl., Dkt. #1.) The Clerk of Court received Plaintiff's complaint and initial motions on November 19, 2014. (*Id.*) "The prison mailbox rule . . . provides that a prisoner's [pleading] is deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk." *Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2015). The parties do not indicate when Plaintiff submitted his complaint for mailing; however, because the Court must "constru[e] all facts and draw[] all reasonable inferences in favor of the nonmoving party," *Jajeh*, 678 F.3d at 566, the Court will consider October 21, 2014 to be the filing date in the event the earlier date works in Plaintiff's favor with respect to any material issue in the case.

[2] The complaint's cover page states "SWAT Team Unit," while Part II, where the parties are listed, refers to "SWAT Team Members." (Compl., Dkt. #1, at 1, 2.)

Plaintiff to complete and return a service form for McCarthy. (2/18/15 Order, Dkt. # 7.) On March 19, 2015, McCarthy waived service (Dkt. # 10), and on May 5, 2015, an attorney filed an appearance on his behalf. (Dkt. # 12.)

On June 19, 2015, the Court received Plaintiff's SAC, naming SWAT Team Members Insley, Cuomo, and Manzo as Defendants for the first time. (SAC, Dkt. # 15.) Defendants attest that they did not know about this suit until "July 1, 2015, when [they] met with an attorney for the City of Chicago Corporation Counsel's Office," and that before then, they were not aware Plaintiff had filed suit about the November 30, 2012 arrest. (Cuomo Aff., Dkt. # 94-1, ¶ 6; Manzo Aff., Dkt. # 94-2, ¶ 6.) Plaintiff explains in his response to Defendants' summary judgment motion that he "did not know [the relevant] SWAT team members' names," and initially "named Chicago Police SWAT Team Chicago Police [sic] because [he] didn't know [the] proper Defendant's name." (Dkt. # 95, at 1, 3.) Plaintiff also states that "Defendants should have been aware [of this suit] after [Plaintiff's] naming of Defendants' commanding officer" and "Defendant[s] should have known that [a] lawsuit was being brought against [them] . . . because [their] boss knew." (Dkt. # 96, ¶¶ 18-20).[3]

### III. ANALYSIS

"In Illinois, the statute of limitations for § 1983 claims is two years." *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) (citing 735 ILCS 5/13–202). As noted, Plaintiff did not name Cuomo and Manzo until the SAC, which he filed in June 2015, more than two years

---

[3] Plaintiff cites only Defendants' affidavits in support, which support Defendants' statements, not Plaintiff's responses.

after the November 30, 2012 tasing incident. Therefore, unless the SAC relates back to the original complaint (which was timely filed before November 30, 2014), or the limitations period was tolled, the claims against Defendants Cuomo and Manzo are untimely.

**Relation Back**

Rule 15(c)(1) provides that an amended complaint relates back to the date of the original pleading if:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Thus, whether the SAC relates back to the original complaint depends on whether Illinois law allows relation back (Rule 15(c)(1)(A)) or, because the SAC changes the naming of the parties, whether Defendants had sufficient notice of this suit that they would not be prejudiced

and knew or should have known that they would have been timely named but for a mistake about their identities (Rule 15(c)(1)(C)).[4]

Prior to addressing the applicability of Rule 15(c), the Court discusses the Supreme Court's most recent decision concerning Rule 15(c) and relation back, *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), as it is relevant to the instant motion. In *Krupski*, Wanda Krupski fractured her femur tripping over a cable onboard an Italian cruise ship. *Id*. at 540. Her ticket identified Costa Crociere, an Italian corporation, as the carrier. She filed suit a few weeks before the end of the limitations period and named as defendant Costa Crociere's sales and marketing agent, Costa Cruise, whose name was also on her ticket. *Id.* at 542-43. Although Costa Cruise notified Krupski in its initial filings that Costa Crociere was the proper party, she did not amend her complaint. Costa Cruise ultimately filed a summary judgment motion. The district court denied the motion but directed Krupski to amend her complaint to include Costa Crociere, which she did. The amended complaint, however, was filed several months after the limitations period ended. *Id.* at 544.

Addressing Costa Crociere's motion to dismiss the amended complaint as untimely, the district court first concluded that Costa Crociere "had constructive notice of the action [during the 120-day Rule 4(m) service period] and had not shown that any unfair prejudice would result from relation back." *Id.* at 545. The district court determined, however, that Krupski made no "mistake" when she named Costa Cruise, as opposed to Costa Crociere, as defendant. Relying

---

[4] Rule 15(c)(1)(C) incorporates subsection (B), which requires that Plaintiff's original complaint and the SAC assert claims arising from the same event. Because both complaints allege claims relating to the November 30, 2012 tasing incident, subsection (B) is satisfied.

7

on the fact that Costa Cruise informed Krupski in several pleadings that Costa Crociere was the correct defendant, "the [district] court concluded that Krupski knew of the proper defendant and made no mistake." *Id.* at 546. The Eleventh Circuit affirmed, adding "that Krupski either knew or should have known of Costa Crociere's identity as a potential party" from "information . . . [on] . . . Krupski's passenger ticket, which she had furnished to her counsel well before the end of the limitations period." *Id.*

Reversing, the Supreme Court began its analysis succinctly: "By focusing on Krupski's knowledge, the Court of Appeals chose the wrong starting point." *Id.* at 548. "The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error." *Id*. "Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* at 549. "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 552. However, a plaintiff may know of the existence of two parties, but not their roles and responsibilities, and a wrong choice based on inadequate knowledge, according to the Court, is a "mistake concerning the proper party's identity." *Id.* at 549 (citing Webster's Third New Int'l Dictionary 1446 (2002) definition of mistake as "'a misunderstanding of the meaning or implication of something'; 'a wrong action or statement

8

proceeding from faulty judgment, inadequate knowledge, or inattention'; 'an erroneous belief'; or 'a state of mind not in accordance with the facts'").

Thus, the Supreme Court clarified that "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski,* 560 U.S. at 548 (emphasis in original). According to the Supreme Court, focusing on the defendant's knowledge, and not the plaintiff's, "is consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Id.* at 550.

With this background, the Court turns to its analysis of whether the SAC relates back to the original complaint under Rule 15(c).

Rule 15(c)(1)(A)

Guiding the Court's analysis with respect to the first subsection of Rule 15(c), which requires deference to state limitations law, is the Rule's relevant Advisory Committee Note, which instructs that federal courts should look to the "controlling body of limitations law" and "if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." Fed. R. Civ. P. 15, advisory committee's note to 1991 amendment. Rule 15(c)(1)(A) was added "to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law." *Id*.

Illinois' relation-back statute, 735 ILCS 5/2-616(d),[5] mirrors Rule 15(c)(1)(C) and was amended in 2002 "to bring the relation-back doctrine in Illinois law into harmony with the federal version of the doctrine, as expressed in Rule 15(c)." *Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 962 N.E.2d 29, 52 (Ill. App. Ct. 2011), *as modified on denial of reh'g* (Feb. 28, 2012); *see also In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 331 (7th Cir. 2009) ("Illinois' relation-back rule . . . is, in all material respects, identical to the federal rule.").

The record in this case supports a finding that the SAC relates back under this subsection of Rule 15(c). As to Defendants' notice of this case, Illinois' relation-back provision requires that the added party, "within the time that the action might have been brought . . . plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits." 735 ILCS 5/2-616(d)(2). The notice need not be formal, *see Owens v. VHS*

---

[5] Under 735 ILCS 5/2-616(d):

> A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading.

10

*Acquisition Subsidiary No. 3, Inc.*, 78 N.E.3d 470, 485 (Ill. App. Ct. 2017), and "so long as [the defendant's] knowledge is of the suit itself and not simply of the events underlying the suit," and they were not prejudiced, the notice requirement for relation back is met. *Borchers*, 962 N.E.2d at 50 (internal quotation marks and citation omitted).

Pursuant to Illinois rules, a plaintiff must "exercise reasonable diligence to obtain service on a defendant." Ill. S. Ct. R. 103(b). [6] "The rule does not dictate a specific time." *Mular v. Ingram*, 33 N.E.3d 771, 778 (Ill. App. Ct. 2015). Rather, Illinois Supreme Court Rule 103(b) states that "reasonable diligence" is based upon "the totality of the circumstances," and that "trial courts are vested with broad discretion in determining whether a plaintiff has exercised reasonable diligence." *Id.* (citing *Segal v. Sacco*, 555 N.E.2d 719, 720 (Ill. 1990)).

According to Defendants' affidavits, they did not know about this suit until July 1, 2015, over seven months after Plaintiff initiated it. But none of Plaintiff's actions after he filed suit can

---

[6] Illinois Supreme Court Rule 103(b) states:

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant only and shall not bar any claim against any other party based on vicarious liability for that dismissed defendant's conduct. The dismissal may be made on the application of any party or on the court's own motion. In considering the exercise of reasonable diligence, the court shall review the totality of the circumstances, including both lack of reasonable diligence in any previous case voluntarily dismissed or dismissed for want of prosecution, and the exercise of reasonable diligence in obtaining service in any case refiled under section 13-217 of the Code of Civil Procedure.

11

be characterized as a failure to exercise reasonable diligence with serving it, and much of those seven to eight months were outside of his control. The Court received the original complaint on November 19, 2014, but did not conduct its required initial review of the complaint until January 6, 2015. In accordance with the directive in that order, Plaintiff submitted an amended complaint within 30 days, naming then-Chicago Police Superintendent Garry McCarthy and a John Doe defendant.

Between February 18, 2015, when the Court allowed the FAC to proceed against McCarthy, and May 5, 2015, when an attorney entered an appearance for him, Plaintiff could do little if nothing to move this case along. The February 18, 2015 order allowing the FAC instructed: "After an attorney enters an appearance for Superintendent McCarthy, Plaintiff should forward discovery requests seeking the name of the unknown Defendant." (2/18/15 Order, Dkt. # 7, at 1.) Plaintiff filed his SAC naming Manzo and Cuomo within seven weeks of an attorney entering an appearance for McCarthy. Plaintiff may have waited until the last month of the limitations period to bring this suit, but once he filed it, he did not delay seeking Defendants' identities and naming them. Under Illinois Supreme Court Rule 103(b), Plaintiff was reasonably diligent with respect to serving Defendants.

Defendants do not contend that their ability to defend the merits of Plaintiff's claims was prejudiced by delays in receiving notice. Furthermore, consideration of the discovery materials included with Defendants' first summary judgment motion—deposition testimony, affidavits, police reports, Taser deployment records, and criminal court records (*see* exhibits at Dkt. # 69)—

dictates against finding prejudice. Accordingly, this Court concludes that the notice requirement of § 2-616(d) has been satisfied.

To the extent Defendants assert that Plaintiff did not make a "mistake," as that term is used in § 2-616(d), the Court disagrees. Post-*Krupski* courts in Illinois have held that not knowing the identity of a defendant constitutes a mistake concerning the proper party's identity. *Borchers*, 962 N.E.2d at 49; *see also Owens,* 78 N.E.3d 470; *Zlatev v. Millette*, 43 N.E.3d 153 (Ill. App. Ct. 2015). In *Borchers*, Diane Borchers sued her former employer, Mayslake Village, for accessing and printing her personal emails. 962 N.E.2d at 32. Borchers' original complaint named Mayslake and "unknown persons" as defendants. *Id.* at 37. In responses to interrogatories, Mayslake identified Frigo (Borchers' supervisor) and Maxwell (a fellow employee) as the individuals who accessed and printed the emails. *Id.* Shortly after taking discovery depositions of Frigo and Maxwell, and after the limitations period expired, Borchers added them in an amended complaint. The Illinois Appellate Court concluded that "a lack of knowledge about the identity of all of those involved in the alleged wrongdoing qualifies as a 'mistake concerning the identity of the proper party' for the purposes of the relation-back doctrine." *Id*. at 49.

Three main considerations supported the *Borchers* court's conclusion. First, "'the term 'mistake' in Rule 15(c) serves only as a general description of the type of knowledge that the new defendant must possess, that is, the knowledge that he or she would have been named in the original complaint if not for a mistake by the plaintiff.'" *Id.* at 47 (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007)). In other words, "mistake" is not a separate requirement

for relation back, but must be viewed through the prism of the defendants' knowledge. *Id.* Second, *Krupski*'s broad definition of "mistake" includes "'a wrong action or statement proceeding from faulty judgment, *inadequate knowledge*, or inattention.'" *Id*. at 48 (quoting *Krupski*, 560 U.S. at 548-49) (emphasis in *Borchers*). Third, focusing on defendants' knowledge is "'consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" *Id.* (quoting *Krupski*, 560 U.S. at 550).

In *Zlatev*, 43 N.E.3d 153, Zlatev filed five complaints over two and one-half years in an attempt to name the party who struck him with a brick while he was visiting a friend. *Id.* at 154-55. His first complaint named the neighbor; another person thought to have knowledge of the incident; and several unknown defendants referred to as John Does. *Id.* at 155. As the parties engaged in discovery, Zlatev filed four amended complaints, each adding parties either suspected of striking him or having better information as to who did. The defendant added in Zlatev's fourth amended complaint—filed after the limitations period expired—sought dismissal of the claim against him as time-barred. *Id.* at 156. In addressing the relation-back issue on appeal, the Illinois Appellate Court began its analysis with *Krupski* and its emphasis that "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known . . . not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id*. at 158 (quoting *Krupski*, 560 U.S. at 548) (emphasis in *Krupski*). Relying on *Krupski* and *Borchers*, the court in *Zlatev* concluded that "[a] lack of knowledge regarding a party's identity certainly may

14

constitute 'a mistake concerning the identity of the proper party.'" *Id*. at 163 (quoting 735 ILCS 5/2–616(d)).

Lastly, the Illinois Appellate Court recently decided *Owens*, 78 N.E.3d 470, in which the plaintiff asserted medical-malpractice claims against the wrong emergency-room physician. The plaintiff named the doctor who admitted him, but did not name the doctor who treated him until after the limitations period expired. Though *Owens* is not a case where a timely-filed complaint referred to John Does or unknown parties, the court emphasized that, post-*Krupski*, the focus of the mistake element of relation back is on the defendant, not the plaintiff. "'If a party is aware of a lawsuit arising out of a set of facts in which he was involved, and . . . knows or should know that the only reason he was not sued was due to a mistake on the plaintiff's part, . . . that party is hard-pressed to claim unfair treatment when the plaintiff later discovers the mistake and sues him. If anything, that party was lucky to have avoided the suit when it was originally filed.'" *Id.* at 481 (quoting *Zlatev*, 43 N.E.3d at 160).

Considering *Borchers*, *Zlatev*, and *Owens* as the "controlling body of limitations law" in Illinois, this Court concludes that Cuomo and Manzo knew or should have known that Plaintiff would have named them had he known their identities and that his failure to name them in the original complaint was a "mistake concerning the identity of the proper party." § 2-616(d). Thus, for all the reasons stated above, Plaintiff's SAC relates back to the original complaint under Rule 15(c)(1)(A). "[R]epose would be a windfall for [Defendants] who understood, or who should have understood, that [they] escaped suit during the limitations period only because [Plaintiff] misunderstood a crucial fact about [their] identit[ies]." *Krupski*, 560 U.S. at 550.

Rule 15(c)(1)(C)

The Court reaches the same conclusion with respect to Rule 15(c)(1)(C). That subsection's notice requirement, Rule 15(c)(1)(C)(i), states that a newly-named defendant must receive sufficient notice of the suit within the period of time for service under Federal Rule of Civil Procedure 4(m). When Plaintiff filed his original and amended complaints in 2014 and 2015, Rule 4(m)'s service period was 120 days. *See* Fed. R. Civ. P. 4(m) advisory committee's notes to 2015 amendment (noting that the period for service shortened to 90 days from 120 days, effective December 1, 2015). However, "Rule 15(c) incorporates not only Rule 4(m)'s standard allowance of 120 days for service of process, but also any extension of time for good cause." *Keller v. U.S.*, 444 F. App'x 909, 911 (7th Cir. 2011) (quoting Rule 15(c) advisory committee's notes to 1991 amendment); *see also Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x 543, 547 (7th Cir. 2014) (same).

Although Defendants may not have known about this suit until July 1, 2015, the delays in identifying them described above—the Court having to review Plaintiff's complaints, service by the U.S. Marshal, an attorney entering an appearance for Superintendent McCarthy, and the attorney providing the identities of Plaintiff's arresting officers—cannot count against Plaintiff. *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 558 n.5 (7th Cir. 1996) ("The 120–day period is tolled, in cases in which the plaintiff relies on the United States Marshals to effectuate service, until the date on which *in forma pauperis* status is granted.") (citing *Paulk v. Dep't of the Air Force*, 830 F.2d 79, 82-83 (7th Cir. 1987) (court delays with ruling on a plaintiff's motions should not be counted against a plaintiff when determining if service was timely under

16

Rule 4(m)); *see also Stewart*, 559 F. App'x at 547 ("[T]he delay attributable to screening [an amended complaint] was outside of [the plaintiff]'s control and constituted good cause to extend the time for notice" under Rule 15(c)(1)(C)(i)); *Keller*, 444 F. App'x at 912 ("As screening is 'solely within the control of the district court,' any delay is not chargeable to the prisoner."); *Sims v. Olszewski*, No. 17 C 79, 2017 WL 1903121, at *7 (N.D. Ill. May 9, 2017) (a plaintiff's "ability to pursue his claims, and to identify the individual defendants responsible for his alleged injuries, was interrupted by the Court's screening of his complaint and the delays in appointing counsel to represent him" and "[t]hese factors were outside of Plaintiff's control . . . ."). Furthermore, as previously noted, Defendants do not state, nor does the record indicate, that they were prejudiced by any delay in notice. Thus, Rule 15(c)(1)(C)(i)'s notice requirement is met.

With respect to subsection (ii), whether Defendants knew or should have known they would have been named in the original complaint, as the Supreme Court stated in *Krupski*:

> [T]he question under Rule 15(c)(1)(C)(ii) is what the prospective defendant *reasonably should have understood about the plaintiff's intent* in filing the original complaint against the first defendant. To the extent the plaintiff's postfiling conduct informs the prospective defendant's understanding of whether the plaintiff initially made a "mistake concerning the proper party's identity," a court may consider the conduct.

*Krupski*, 560 U.S. at 553–54 (emphasis added). The face of the complaint as well as Plaintiff's post-filing conduct clearly indicate that he intended to sue the officers who arrested and tased him; Defendants do not contend otherwise. It matters little whether Plaintiff initially named "Chicago Police Dep't. S.W.A.T. Team Unit at 35th and Michigan" and "S.W.A.T. Team Members" as defendants because he thought a SWAT-team unit was a suable party; the police department was the proper defendant for his claims; or he did not know the officers' names and

17

used a descriptive term instead. Defendants knew or should have known from the original complaint that they were the intended defendants.[7] Neither Plaintiff's original complaint nor his conduct after filing it suggest otherwise. To the extent Plaintiff's diligence in filing his complaint is at issue, the *Krupski* Court made clear that "[t]he Rule plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them." *Id*. at 553.

In sum, Defendants: (1) received actual notice of this suit both within the period of time "the action might have been brought . . . plus the time for service permitted under Illinois Supreme Court Rule 103(b)" as well as "within the period provided by Rule 4(m)"[8] such that they were not "prejudiced in maintaining a defense on the merits," and (2) knew or should have

---

[7] According to Rule 15's Advisory Committee Notes, naming a nonexistent entity or a governmental entity instead of individual officers can be a mistake. The current relation-back language was purportedly enacted to address cases where claimants denied Social Security benefits "instituted timely action[s] but mistakenly named as defendant the United States, the Department of HEW, [and] the 'Federal Security Administration' (a nonexistent agency)." Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment (citing *Cohn v. Fed. Sec. Admin.*, 199 F. Supp. 884, 885 (W.D.N.Y.1961)); *see also Donald,* 95 F.3d at 557 (naming the Cook County Sheriff's Department as opposed to individual jail officers was a Rule 15 "mistake" since "[a] legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule 15(c)(3)(B)").

[8] Since Defendants' actual notice was within the service periods, the Court need not address whether they had constructive notice or imputed knowledge, which Plaintiff alludes to when he asserts that the individual officers were aware of this suit when "their boss knew." (Pl.'s Resp., Dkt. # 96, ¶¶ 18-20.) Nevertheless, the Court notes that the 1966 amendment to Rule 15 supports Plaintiff's position. That amendment, as set forth in Rule 15(c)(2), provides that when the United States or a United States officer is added as a defendant, the relation-back requirements are satisfied "if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency." Fed. R. Civ. P. 15(c)(2).

known from the original complaint that they would have been named had Plaintiff known their identities. § 2-616(d); Fed. R. Civ. P 15(c)(1)(C). *Krupski*, 560 U.S. at 553 ("[T]he Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion.").

Because the Court finds that the SAC relates back to the original complaint, the Court need not address the issue of equitable tolling.

## IV. CONCLUSION

For the reasons stated in this opinion, Defendants' second motion for summary judgment [92] is denied.

**DATE:** August 28, 2018

**Ronald A. Guzmàn**
**United States District Judge**